UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREGORY D. VALENTINE,<br><br>  Plaintiff,<br><br>v.<br><br>DEE DAVID GAY,<br><br>  Defendant. | Case No. 3:23-cv-00204<br><br>Judge Aleta A. Trauger<br>Magistrate Judge Alistair E. Newbern |

To:   The Honorable Aleta A. Trauger, District Judge

**REPORT AND RECOMMENDATION**

Defendant Dee David Gay, a Sumner County Criminal Court judge, has moved to dismiss pro se Plaintiff Gregory D. Valentine's claims against him in this civil rights action brought under 42 U.S.C. § 1983. (Doc. No. 12.) Valentine has responded in opposition. (Doc. No. 22.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant Gay's motion to dismiss.

**I.   Factual Background and Procedural History**

Valentine alleges that he "was forced into a malicious prosecution plea" and served two years in the Sumner County Jail. (Doc. No. 1, PageID# 4.) He states that he should have been released on September 30, 2011, "[b]ut for some unknown reason" he remained incarcerated for an additional thirteen months until October 25, 2012. (*Id.*)

On March 7, 2023, Valentine filed a complaint under 42 U.S.C. § 1983 against Gay in his official capacity as a Sumner County Criminal Court judge. (Doc. No. 1.) Valentine alleges that Gay violated the Fourth Amendment to the U.S. Constitution and kidnapped Valentine in violation of Tenn. Code Ann. § 39-13-302. (*Id.*) He seeks $500,000.00 in damages "for all of the cruel and

inhumane abuse [Gay] has subjected African-Americans to while presiding as the judge there in Sumner County[.]" (*Id.* at PageID# 5.)

The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.)

Gay has appeared and moved to dismiss Valentine's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 12.) Gay argues that Eleventh Amendment sovereign immunity bars Valentine's official-capacity claims against him and, in the alternative, that Valentine's claims are untimely under the relevant statute of limitations. (Doc. No. 13.)

The Court allowed Valentine an opportunity to move for leave to amend his complaint and stayed Valentine's deadline to respond in opposition to Gay's motion to dismiss. (Doc. No. 16.) Valentine timely filed a motion for leave to amend and a proposed amended complaint (Doc. Nos. 19, 19-1), and Gay responded in opposition (Doc. No. 20). The Court denied Valentine's motion for leave to amend, finding that his proposed amended claims were untimely and therefore futile, and ordered Valentine to respond in opposition to Gay's motion to dismiss. (Doc. No. 21.)

Valentine filed a response in opposition to Gay's motion, arguing "that enforcing the statute of limitations would cause undue prejudice," that "[t]he public interest is best served by ensuring that individuals have a fair and meaningful opportunity to seek redress for violations of their civil rights[,]" and "that the statute of limitations should be tolled" because Valentine "is a minority and had a disability at the time of the civil rights violation[s]" at issue. (Doc. No. 22, PageID# 88, 90, 93.)

Gay did not file an optional reply in support of his motion to dismiss.

II.     **Legal Standard**

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City*

2

*of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Whether a court has subject-matter jurisdiction is a "threshold" question in any action, *Am. Telecom Co. v. Republic of Leb.*, 501 F.3d 534, 537 (6th Cir. 2007), and one that courts may raise sua sponte, *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

A challenge to subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "A state's assertion of sovereign immunity constitutes a factual attack." *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 564 (M.D. Tenn. 2011). In resolving assertions of sovereign immunity, no presumption of truth applies to the plaintiff's factual allegations, and the "court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). District courts reviewing factual attacks on jurisdiction have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

An entity asserting Eleventh Amendment sovereign immunity "has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002); *see also Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *id.*).

**III.     Analysis**

Gay's primary argument is that the Court should dismiss Valentine's official-capacity claims against him under Rule 12(b)(1) because he is entitled to Eleventh Amendment sovereign

3

immunity from Valentine's claims.[1] (Doc. No. 13.) The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "The immunity also applies to actions against state officials sued in their official capacity for money damages." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (quoting *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005)). However, Eleventh Amendment "immunity applies only to lawsuits against the State or 'an arm of the State,' not to those against political subdivisions like counties." *Laborers' International Union, Local 860 v. Neff*, 29 F.4th 325, 330 (6th Cir. 2022) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Ernst*, 427 F.3d at 358.

Gay argues that he is entitled to sovereign immunity because he "is a state official" under Tenn. Code Ann. §§ 16-10-101, 8-42-101(3)(A), and 8-23-103(1)(A). (Doc. No. 13, PageID# 28.) Valentine has not responded to Gay's sovereign immunity arguments.

"[F]or the purpose of sovereign immunity[,] 'individuals sued in their official capacities stand in the shoes of the entity they represent.'" *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 420 (6th Cir. 2004) (quoting *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)). The Court must therefore

---

[1] The Sixth Circuit "treat[s] sovereign immunity as a 'jurisdictional bar' that, 'once raised as a jurisdictional defect, must be decided before the merits.'" *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) (quoting *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)). This Court must therefore address Gay's sovereign immunity arguments first before turning to his alternative statute of limitations arguments, if necessary.

determine whether the Sumner County Criminal Court is considered an arm of the State of Tennessee for purposes of the Eleventh Amendment.

### A. Whether the Sumner County Criminal Court Is An Arm of the State

The Sixth Circuit directs courts to apply four factors in making that determination:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Ernst*, 427 F.3d at 359 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44–45 (1994)). The analysis is made based on the law of the state in question.

The first factor is "generally . . . the most important one, . . . [but] it is not 'the sole criterion for determining whether an [entity] is a state entity for sovereign immunity purposes.'" *Id.* (quoting *S.J.*, 374 F.3d at 421). This is especially so when the entities in question are state courts. *See Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 761 (6th Cir. 2010) (holding that district court erred "[i]n concluding that potential financial liability is the only determinative factor—or the near-determinative factor—in establishing whether a state court is an arm of the state for purposes of Eleventh Amendment sovereign immunity"); *Laborers' International Union, Local 860*, 29 F.4th at 333 ("That the State has delegated some funding responsibility to a local government does not cancel out the State's extensive authority over the Juvenile Court."). The "need to inquire beyond the issue of financial liability relates back to the Supreme Court's emphasis that the Eleventh Amendment incorporates 'twin reasons' for granting states sovereign immunity: the desire not to infringe either a state's purse or its dignity." *Pucci*, 628 F.3d at 761 (quoting *Hess*, 513 U.S. at 47); *see also id.* ("Sovereign immunity . . . 'does not exist solely in order to prevent federal-court judgments that must be paid out of a State's treasury; it also serves to avoid the indignity of

5

Case 3:23-cv-00204    Document 23    Filed 10/12/23    Page 5 of 10 PageID #: 102

subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" (quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 58 (1996))).

Tennessee law provides that criminal court judges are officers of the state whose salaries and expenses are paid out of the state treasury. Tenn. Code Ann. §§ 8-23-103, 8-23-104, 8-26-101. Thus, Tennessee is potentially liable for judgments against criminal court judges in their official capacities, and the first *Ernst* factor weighs in favor of finding that criminal courts are arms of the state for these purposes. *See Ernst*, 427 F.3d at 359 ("[I]t is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case, that controls the inquiry[.]" (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997))).

The second *Ernst* factor—"the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions," *Ernst*, 427 F.3d at 459—weighs in favor of sovereign immunity when states treat their courts "as segments of state government." *Laborers' International Union, Local 860*, 29 F.4th at 330. In analyzing this factor, the Sixth Circuit has considered state laws creating unified state judicial systems under the control of the states' supreme courts and vesting the states' judicial power in their lower courts. *Pucci*, 628 F.3d at 762–63; *Laborers' International Union, Local 860*, 29 F.4th at 330–31.

The Tennessee General Assembly has "granted and clothed" "the supreme court" "with general supervisory control over all the inferior courts of the state" "[i]n order to ensure the harmonious, efficient and uniform operation of the judicial system of the state[.]" Tenn. Code Ann. § 16-3-501. It has also empowered the Tennessee Supreme Court to "[d]irect the administrative director of the courts to provide administrative support to all of the courts of the state[.]" *Id.* § 16-3-502(3). The Tennessee Constitution vests "[t]he judicial power of this State . . . in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to

time, ordain and establish" and "in the Judges thereof[.]" Tenn. Const. art. 6, § 1. Tennessee law further provides that "[t]he judicial power of the state is vested in judges of the . . . criminal courts," among "other courts created by law." Tenn. Code Ann. § 16-1-101. In *Laborers' International Union, Local 860*, the Sixth Circuit also found significant that the judges of the state court at issue have the "authority to serve temporarily throughout Ohio's lower court system if circumstances require" and "take an oath to support the Ohio Constitution." 29 F.4th at 331, 333 (first citing Ohio Const. art. IV, § 5(A)(3); and then citing Ohio Rev. Code Ann. § 3.23). Similarly, the Tennessee Supreme Court may "[d]esignate and assign temporarily any judge or chancellor to hold or sit as a member of any court, of comparable dignity or equal or higher level, for any good and sufficient reason." Tenn. Code Ann. § 16-3-502(3)(A). And, "[b]efore entering upon the duties of office, every judge . . . in th[e] state" must "take an oath or affirmation to support the constitutions of the United States and" of the State of Tennessee. *Id.* § 17-1-104. The second *Ernst* factor favors finding the Sumner County Criminal Court to be an arm of the state. *Ernst*, 427 F.3d at 459; *see also Pucci*, 628 F.3d at 762–63; *Laborers' International Union, Local 860*, 29 F.4th at 330–31.

The third *Ernst* factor asks "whether state or local officials appoint the board members of the entity[.]" *Ernst*, 427 F.3d at 459. The State of Tennessee exercises considerable control over the selection and removal of criminal court judges. Tennessee law provides that criminal court judges are elected by voters in the judicial districts where they sit and are subject to age, residency, and professional qualifications set by state law. Tenn. Const. art. 6, § 4; Tenn. Code Ann. §§ 17-1-101–17-1-107. Criminal court judges may only be removed by a two-thirds vote of both houses of the state legislature. Tenn. Const. art. 6, § 6. If a criminal court judge vacancy occurs "by death, resignation, retirement, or otherwise," state law provides that "the governor shall fill the vacancy by appointing one (1) of three (3) persons nominated by the [trial court vacancy] commission."

Tenn. Code Ann. § 17-4-308(a). The third *Ernst* factor weighs in favor of finding that the Sumner County Criminal Court is an arm of the state. *Ernst*, 427 F.3d at 459; *see also Pucci*, 628 F.3d at 763–64; *Laborers' International Union, Local 860*, 29 F.4th at 331.

The fourth *Ernst* factor is easily met. "[S]tate courts quintessentially fall within the 'traditional purview of state government.'" *Laborers' International Union, Local 860*, 29 F.4th at 331 (quoting *Pucci*, 628 F.3d at 764). The Sixth Circuit has held that "[t]he state judiciary is 'one of three essential branches of state government'" and that "state courts serve as the State's 'adjudicative voice.'" *Id.* (first quoting *Ernst*, 427 F.3d at 361; and then quoting *S.J.*, 374 F.3d at 421). "If any entity qualifies as an arm of the State, a state court does." *Id.*; *see also Tennessee v. Lane*, 541 U.S. 509, 527 n.16 (2004) ("[T]he provision of judicial services[ is] an area in which local governments are typically treated as 'arm[s] of the State' for Eleventh Amendment purposes[.]" (third alteration in original) (quoting *Mt. Healthy City Bd. of Ed.*, 429 U.S.at 280)).

All four *Ernst* factors thus direct the Court to find the Sumner County Criminal Court to be an arm of the State of Tennessee for Eleventh Amendment purposes. *Cf. Pucci*, 628 F.3d at 764; *Laborers' International Union, Local 860*, 29 F.4th at 331–32 (collecting cases holding "that the courts in a State's third branch of government count as arms of the State"). The Court will therefore consider whether any sovereign-immunity exceptions apply to Valentine's claims against Gay.

**B.     Whether Any Sovereign-Immunity Exceptions Apply to Valentine's Claims**

"There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)[,] applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None of these exceptions applies to Valentine's official-capacity claims against Gay.

First, the Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in state and federal courts unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (citing Tenn. Code Ann. § 20-13-102(a)); *Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991) (quoting Tenn. Code Ann. § 20-13-102(a)). Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. The first exception therefore does not apply.

Second, the *Ex parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler v. Earley*, 865 F.3d, 391,412 (6th Cir. 2017) (quoting *S & M Brands, Inc.*, 527 F.3d at 507). Valentine's complaint does not seek injunctive relief against Gay. The second exception therefore does not apply.

Third, "[s]ection 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the States' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that Congress did not abrogate states' immunity to suits brought under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler*, 865 F.3d at 410. The third exception does not apply, and sovereign immunity therefore bars Valentine's official-capacity claims against Gay.

Because Valentine's claims are subject to dismissal under Rule 12(b)(1) based on Gay's sovereign immunity, the Court does not need to address Gay's alternative argument that Valentine's claims are also subject to dismissal under Rule 12(b)(6) because they are untimely.

*See, e.g.*, *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *3 (M.D. Tenn. Aug. 28, 2009) (finding that "it is not necessary to reach [ ] Rule 12(b)(6) arguments" where "jurisdictional issues are dispositive"); *Kaiser v. United States*, No. 1:99CV608, 2000 WL 637344, at *1 (W.D. Mich. Mar. 20, 2000) ("Because this action is clearly barred by the doctrine of sovereign immunity, the court need not address defendant's alternative arguments.").

IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Gay's motion to dismiss Valentine's complaint (Doc. No. 12) be GRANTED and that this action be DISMISSED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 12th day of October, 2023.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge